THE HARTFORD INSURANCE GROUP v MILE HIGH DRILLING
COMPANY

Docket No. 78-3586. Submitted December 4, 1979, at Detroit.—Decided April 1, 1980.

Mile High Drilling Company leased a crane from Contractors Machinery Company for use at a construction site. Mile High's supervisor requested the loan of a crane operator from another contractor at the site, Greenfield and Associates. While Greenfield's operator was performing a loading operation the crane tipped over and was damaged. Contractors Machinery repaired the crane and sought reimbursement from the Hartford Insurance Group, Contractors' insurer. Hartford, as subrogee of Contractors Machinery, brought an action for damages against Mile High and Greenfield, each of which subsequently brought cross-claims against the other. The Wayne Circuit Court, John D. O'Hair, J., found that Greenfield was not liable and that Mile High was liable for damages in the amount of $15,500. Hartford appeals, alleging that Greenfield should also have been found liable, that the trial court was compelled by defendants' failure to answer Hartford's request for admissions to award damages of $26,244.89 and that the trial court erred in finding that plaintiff sustained damages of only $15,500. *Held:*

1. The crane operator was a borrowed servant for purposes of the doctrine of *respondeat superior.* Therefore, the proper test for determination of liability is that of control. A review of the evidence indicates that the trial court's finding that Greenfield had relinquished control over the crane operator and thus was not liable under the doctrine of *respondeat superior* was not clearly erroneous.

2. The plaintiff failed to preserve for review the issue of a defect in the defendants' answer to a request for admissions as to the amount of damages.

3. The trial court's finding on the amount of damages was not clearly erroneous.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 53 Am Jur 2d, Master and Servant §§ 2, 26, 417.

[2] 53 Am Jur 2d, Master and Servant § 2.

[3] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*

[5] 5 Am Jur 2d, Appeal and Error §§ 600-602.

1. MASTER AND SERVANT — RESPONDEAT SUPERIOR — CONTROL.

   The test for determining liability in the case of a negligent borrowed servant is not the economic reality test as applied in cases involving the Worker's Disability Compensation Act; rather, it is the control test, under which the determination of which master is liable for the negligence of a borrowed servant under the doctrine of *respondeat superior* depends upon which master had complete control over the servant at the time of the negligent act.

2. MASTER AND SERVANT — ECONOMIC REALITY TEST.

   The economic reality test for determination of whether a worker is an employee of a particular employer examines four factors: (1) control of the worker's duties, (2) the payment of wages, (3) the right to hire, fire, and discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal.

3. APPEAL — FINDINGS OF FACT — CLEAR ERROR.

   Findings of fact made by a trial judge at a bench trial will not be set aside on appeal unless they are clearly erroneous; they are clearly erroneous where, although there is evidence to support them, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made.

4. MASTER AND SERVANT — RESPONDEAT SUPERIOR — CONTROL TEST.

   The control test for determination of liability of an employer for the negligence of a borrowed employee under the doctrine of *respondeat superior* is whether in the particular service in which he is engaged the employee continues liable to the direction and control of his original employer or becomes subject to that of the employer to whom he is lent or hired; to escape liability the original employer must resign full control of the employee for the time in question.

5. PLEADING — REQUEST FOR ADMISSIONS — DEFECT IN ANSWER — PRESERVING ISSUE — COURT RULES.

   A plaintiff wishing to take advantage of a defect in a defendant's answer to a request for admissions must raise the issue prior to the end of trial (GCR 1963, 312.2).

*Davies, Rudzki & Bremer* (by *A. Ross MacEwen),* for plaintiff.

*Fischer, Franklin, Ford, Simon & Hogg* (by

*Ralph H. Houghton, Jr.,* and *Lee T. Hoffman, Jr.),* for defendant Greenfield and Associates.

Before: MacKENZIE, P.J., and V. J. BRENNAN and D. F. WALSH, JJ.

MacKENZIE, P.J. On September 11, 1975, plaintiff Hartford Insurance Group filed a complaint in Wayne County Circuit Court for damages against defendants Mile High Drilling Company and Greenfield and Associates. Defendants subsequently filed cross-claims against each other. Plaintiff now appeals the lower court judgment that defendant Greenfield was without liability and that defendant Mile High was liable for damages only in the amount of $15,500.

Mile High leased a crane from plaintiff's subrogor, Contractors Machinery Company, for use at the Port Huron Tunnel project. On December 19, 1973, Mile High agreed to let Greenfield, another contractor at the tunnel site, use the crane for Greenfield's own purposes. The crane was used by Greenfield until December 20, 1973. On December 28, 1973, Mile High's supervisor asked Greenfield's supervisor if he would loan his crane operator to him. Other than to instruct the crane operator, Mr. Edwards, to do as the Mile High supervisor requested, Greenfield did not supervise him. While Mr. Edwards was loading some buggies owned by Mile High onto a trailer, the crane tipped over and sustained damage.

The owner of the machine, Contractors Machinery, repaired the crane itself and sought reimbursement from plaintiff, its insurer. An appraiser of construction equipment examined the damaged crane several weeks after the accident, and testified that the total cost of repair was $31,830.41 including profit, and $26,494.49 without profit. The

appraiser, however, testified that he did not possess expertise on the cause of damages and, consequently, had no opinion on how the crane was damaged.

Plaintiff first contends that the trial court erred in finding that the crane operator, Mr. Edwards, was a borrowed servant of Mile High, thus relieving Greenfield from *respondeat superior* liability. We disagree.

The trial court found that Greenfield's supervisor, Mr. Loy, made the crane operator's services available to Mile High. In doing so, he did not retain control and supervisory duties over the crane operator for the service he was to perform for Mile High. Thus, the crane operator was a borrowed employee under *Janik v Ford Motor Co,* 180 Mich 557, 562; 147 NW 510 (1914). In that case, the Michigan Supreme Court held that the determination of which master is liable under the doctrine of *respondeat superior* in a borrowed servant situation depends upon which master had complete control over the servant at the time of the accident. Since Greenfield lacked control, it was not liable under the *respondeat superior* doctrine for the negligence of Mr. Edwards in performing the service.

In *Nichol v Billot,* 406 Mich 284; 279 NW2d 761 (1979), the Michigan Supreme Court was confronted with a situation involving the issue of whether the control test or the economic reality test is the proper test to employ. The economic reality test examines the following four factors: (1) control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal.

*Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976).

In *Nichol,* the plaintiff's decedent had been killed while working on an excavation project for a trailer park when a trench collapsed. The plaintiff's decedent was hired by the trailer park's owner, and, consequently, the plaintiff received workmen's compensation benefits from the owner. The owner had hired the defendant, an excavation contractor, to dig the trench. The defendant was also sued for negligence by the plaintiff, who contended that the defendant was an independent contractor and thus subject to suit. The defendant, however, contended it was an employee of the trailer park's owner and thus immune from liability under the provision of the Worker's Disability Compensation Act that bars suits by employees against co-employees, MCL 418.827(1); MSA 17.237(827)(1).

The Court rejected use of the control test for determining whether the defendant was an employee of the trailer park owner or an independent contractor. The Court stated that the control test has been typically applied to cases involving the vicarious liability of a master for the acts of his servant vis-à-vis a third party. Stating that it was a misuse of the test to use it for purposes other than that for which it was originally intended, the Court limited it to cases involving the issue of liability under the doctrine of *respondeat superior.*

Upon rejecting the control test, the Court decided to apply the economic reality test. Noting that an independent contractor is a third party subject to suit under § 827(1) of the Worker's Disability Compensation Act, the Court stated that the economic reality test was the appropriate test to determine which persons are not given immunity under the provision as well as those who are.

Taking into consideration the Supreme Court's discussion of the control test and the economic reality test in *Nichol,* we conclude that employment of the control test was appropriate in this case, which involves a question of *respondeat superior* liability.[1] Unlike *Nichol,* the workmen's compensation statute is not involved here. Although the actual payment of workmen's compensation benefits was not at issue in *Nichol,* the Supreme Court found it significant that important objectives of the workmen's compensation statute were involved. The Court noted:

"Although workmen's compensation benefits are not at issue here, the policies behind the act are involved through the invocation of § 827(1). We think that as the economic reality test is the appropriate test to determine which persons are intended to be included within the act, it is also the appropriate test to determine which persons should not be subject to the act's bar against common-law remedies. Because the act is concerned with the correction of economic evils through remedies unknown to the common law, the control test, a creature of common law, is not responsive to the provisions of the statute. We deem it appropriate to apply the principle which accomplishes the purpose of the social legislation involved here, which is to afford maximum benefit to injured parties. As it is defendant who relies on the worker's compensation act to support his defense, he should not be heard to complain that a rule utilized to construe the act's provisions is to be employed." *Nichol v Billot, supra,* at 298-299.

Having decided that employment of the control test was appropriate, we must next determine whether the trial court erred in concluding that

[1] In light of the Supreme Court's discussion in *Nichol v Billot,* we disagree with plaintiff's condition that this Court's opinion in *Smith v Martindale,* 81 Mich App 682; 266 NW2d 49 (1978), mandates application of the economic reality test.

Greenfield was not in control of the crane operator and thus not liable under the *respondeat superior* doctrine.

The findings of fact by a trial judge after a bench trial will not be set aside unless clearly erroneous. GCR 1963, 517.1. Findings are clearly erroneous when, although there is evidence to support them, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made. *People v Goss,* 89 Mich App 598; 280 NW2d 608 (1979).

The control test was set forth in *Janik v Ford Motor Co, supra,* at 562:

· " 'The test is whether in the particular service which he is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded, as the right to exercise such control. To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under control of· a third person.' "

Greenfield's supervisor, Mr. Loy, testified that he lent the operator to Mile High, pursuant to a request by its supervisor, Mr. Eddy. He stated that he did not know what Mr. Eddy wanted him for at that time, and that he had no involvement in the task, except to tell the operator to report to Mr. Eddy for a job. He also stated that the movement of the buggies onto the trailer did not affect Greenfield's operations one way or another.

Consequently, evidence was presented that Greenfield resigned full control over the crane operator once he was loaned to Mile High, and

that the crane operator became a borrowed servant of Mile High. Our review of the remaining evidence does not convince us that a different conclusion is warranted. We therefore conclude that the trial court did not err in holding that Greenfield was not liable under the doctrine of *respondeat superior.*

Plaintiff next contends that the failure of defendants to answer plaintiff's request for admissions concerning the amount of damages constituted an admission of the correctness of the damage figure set forth by plaintiff. Consequently, the trial court was compelled to award $26,244.89, the damage amount alleged by plaintiff. We disagree.

GCR 1963, 312, the court rule dealing with requests for admissions, is based upon Federal Rule of Civil Procedure (FRCP) 36. See Committee Notes, 2 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), p 216. In *Hartley & Parker, Inc v Flordia Beverage Corp,* 348 F2d 161 (CA 5, 1965), the defendant failed to verify answers to requests for admissions as required by FRCP 36. Nonetheless, the requests for admissions and their answers were offered by plaintiff at trial and were admitted into evidence. Defendant did not claim that because of the lack of verification the requests stood admitted until after the close of the evidence. The Court, interpreting FRCP 36, held that the duty rested on the plaintiff, if it wished to take advantage of a defect in defendant's answer to requests for admissions, to raise the issue prior to the end of trial. The Court noted that the plaintiff's failure to raise the issue at trial prevented the trial court from exercising its discretion to determine whether to allow the defendant to cure the defect prior to the end of trial.

Noting that GCR 1963, 312 is based upon FRCP

36, we conclude that the rule set forth in *Hartley* is likewise applicable to GCR 1963, 312. Such a rule facilitates the use of the court's discretion under GCR 1963, 312.2 to permit a party to withdraw or amend any admissions for good cause shown. Plaintiff failed to raise this issue at the trial court level and, consequently, we conclude that it is without merit.

Plaintiff lastly contends that the trial court erred in finding that plaintiff sustained damages of only $15,500 in repairing the crane. We also disagree with this contention.

In awarding $15,500 in damages, the court stated that it could not conclude that some of the repair charges listed by plaintiff were causally related to the negligence of Mr. Edwards and Mr. Eddy. Further, the court stated that plaintiff's subrogor generally received a 25% discount on parts from its supplier and it was unclear whether the charges as listed took this discount into consideration. The trial court noted that evidence as to the reasonable cost of repairing the damage ranged from $10,000 to $31,830. Thus, the court concluded that $15,500 was an amount that was reasonably incurred in repairing the crane.

As noted previously, the fact findings of a trial court will not be reversed unless clearly erroneous. Our review of the record reveals that evidence on the amount of damages is inconclusive. Consequently, we do not have a definite and firm conviction that a mistake was committed by the trial court.

Affirmed. Costs to defendant-appellee.