658 P.2d 238

The SPECIAL FUND OF the INDUSTRIAL COMMISSION OF ARIZONA, a statutory party in interest pursuant to A.R.S. § 23–1065 and A.R.S. § 23–907, Petitioner,

v.

CATALINA TRUCKING COMPANY, INC., Respondent Employer,

Marvin B. Clifton, Respondent Employee.

CATALINA TRUCKING COMPANY, INC., Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Marvin B. Clifton, Respondent Employee,

The Special Fund of the Industrial Commission of Arizona, Respondent Carrier.

Nos. 1 CA–IC 2678, 1 CA–IC 2682.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 12, 1982.

Rehearing Denied Dec. 13, 1982.

Review Denied Jan. 18, 1983.

James A. Overholt, Chief Counsel, Phoenix, for petitioner The Sp. Fund of the Indus. Com'n of Arizona and respondent The Indus. Com'n of Arizona.

Frank W. Frey, Tucson, for petitioner/respondent employer Catalina Trucking Co., Inc.

Donald Estes, Tucson, for respondent employee Marvin B. Clifton.

## OPINION

HAIRE, Judge.

In this review of an award entered by the Industrial Commission in a workmen's compensation proceeding, the following three issues are presented by the petitioning employer:

1. Is there evidence to support the administrative law judge's conclusion that the injured claimant was an employee of the petitioner employer (Catalina)?

2. If the claimant was an employee of Catalina, did the injury arise out of that employment?

3. Was the evidence sufficient to support the administrative law judge's conclusion that there was a causal relationship between the claimant's physical condition and the alleged incident?

The above-listed second issue is also raised by the other petitioner in this special action review, "The Special Fund of the Industrial Commission of Arizona."[1] Although not raised by the parties, we question the standing of "The Special Fund of the Industrial Commission of Arizona" to itself seek appellate review of an award entered by the Industrial Commission. We find no statute which makes the "Special Fund" an entity separate and apart from the Industrial Commission, which entered the questioned award. However, we need not decide this question of standing, since the issues raised by the Special Fund have also been raised by a party which does have standing, Catalina.

The facts of the incident giving rise to the claim are not disputed. The claimant was a truck driver, and on the date of the injury he and a co-driver were driving a truck owned by Catalina en route to California. They stopped at a self-service truck stop on Interstate 10 near Eloy, Arizona, for the purpose of refueling. While at the truck stop, claimant began to fill the truck's fuel tank. He then went inside to use the restroom. As he was walking out of the restroom to pay for his fuel, he interrupted an armed robbery of the service station, and apparently without any provocation on his part, was hit on the head by one of the robbers several times with a pistol, rendering him unconscious. His co-driver then took him to a nearby hospital, and later he underwent brain surgery.

The following additional facts are pertinent to the issue of whether there was evidence to support the administrative law judge's determination that claimant was an employee of Catalina. While the truck being driven by the claimant was owned by Catalina, it had been leased by Catalina to a

1. Since the petitioner employer did not carry workmen's compensation insurance coverage, the award also imposed liability against the Industrial Commission's Special Fund pursuant to A.R.S. § 23–907.

truck broker, Mobile Air Transport.[2] Under that agreement, Catalina was required to furnish not only the truck, but also the driver or drivers for the truck. Concerning the hiring of claimant, the testimony of Catalina's president was to the effect that at some time during the month prior to the time of the incident in question, he needed a driver and interviewed claimant, who had been referred to him by Mobile. Claimant was hired on a load-to-load basis, and Catalina agreed to pay him a percentage (eleven or twelve percent) of the gross amount received by Catalina from Mobile pursuant to the truck-lease agreement. The parties further agreed that claimant would take care of his own withholding taxes, social security, unemployment insurance, and "everything else". Prior to the time of the injury, claimant had made several coast-to-coast trips driving Catalina's truck. The evidence is quite clear that the right to control the details of claimant's driving activities was delegated by Catalina to Mobile by the terms of the lease agreement.[3] Thus Mobile gave Catalina's drivers instructions with regard to where and when to pick up loads, the routes to be taken, and where and when the cargo was to be delivered. Mobile also required the drivers to call in daily, and to keep log books and various other records.

The lease agreement also gave Mobile complete day-to-day control of the truck. To illustrate, Mobile exclusively contracted for the cargo to be carried and negotiated the price to be charged. Under the lease Catalina did not have the right to refuse a load for any reason, and could not use the truck for loads other than those contracted for by Mobile.

Under both statutory and case law in Arizona, it is axiomatic that the principal factor to consider in differentiating between the status of employee and independent contractor for workmen's compensation purposes is whether the employer has retained the right to control or supervise the method or details involved in reaching a specified result. See A.R.S. § 23–902; *Home Insurance Co. v. Industrial Commission,* 123 Ariz. 348, 599 P.2d 801 (1979).

"To determine the right to control, courts look to the totality of the facts and circumstances of each case, examining various indicia of control. *Reed v. Industrial Commission of Arizona,* 23 Ariz.App. 591, 534 P.2d 1090 (1975). These indicia, as articulated by the cases, include: the duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business."

123 Ariz. at 350, 599 P.2d at 803.

■ Catalina contends that the administrative law judge erred in finding that claimant was Catalina's employee because all of the evidence shows that it was Mobile, not Catalina, which had and exercised the right to control and supervise claimant in the method and details of the performance of his employment as a truck driver. Factually, we agree with Catalina's premise. Given the details of claimant's employment arrangement and the terms of the lease agreement, it is clear that control and supervision over claimant's employment was vested in Mobile. However, in our opinion this does not necessarily require the conclusion that the administrative law judge erred in finding that claimant was an employee of Catalina.

Leaving aside for the moment the question of who his employer might be, the evidence presented before the Commission clearly establishes that claimant's employment as a truck driver was as an employee of someone, and not as an independent con-

**2.** Mobile Air Transport was not made a party to these proceedings.

**3.** The record does not indicate whether the lease was written or not, but the extensive oral testimony as to the lease arrangements between Catalina and Mobile is basically uncontroverted.

tractor. This conclusion results from the fact that he was admittedly subject to extensive control and supervision over the details of accomplishing his work. The fact that all the equipment used in his work was furnished to him lends further support to that conclusion. The question is, whose employee was he—Catalina's or Mobile's?

Pertinent to the resolution of that question, we note that claimant was hired and paid by Catalina, and it was Catalina that had the right to fire him. The record does not disclose that claimant had any contractual relationship whatsoever with Mobile. Rather, it was uncontroverted that under the lease agreement Catalina was required to furnish to Mobile a driver for the truck which was subject to the lease agreement. Does the fact that under the lease agreement Catalina delegated to Mobile the right to supervise and control claimant in the performance of his employment as a truck driver somehow make claimant an employee of Mobile or change his relationship with Catalina to that of independent contractor? We hold that it does not, and that under the totality of the facts presented here, claimant was initially an employee of Catalina, and remained an employee of Catalina, notwithstanding the delegation of the control of his work activities to Mobile through the provisions of its lease agreement. We know of no principle of law which would preclude the delegation of an employer's right to control his employee to a third party, or require a holding that under such delegation the relationship somehow was transformed into that of an independent contractor. We therefore hold that the administrative law judge did not err in concluding that claimant was an employee of Catalina at the time he was injured.

■ We next consider Catalina's contention that, assuming that claimant was its employee, the administrative law judge erred in finding that the injuries suffered by claimant arose out of his employment as a truck driver. Arizona's workmen's compensation laws provide compensation for injuries by accident "arising out of and in the course of" employment. *See* A.R.S. § 23–

1021. Since it is uncontroverted that the assault on claimant occurred at the truck stop "in the course of" his employment, Catalina's contention centers on the "arising out of" component of this test of compensability. The concept of "arising out of" has a causation connotation. An injury arises out of the employment when it originates from a risk connected with the employment. *Hartford Accident & Indemnity Co. v. Industrial Commission,* 126 Ariz. 309, 614 P.2d 851 (1980). Causation may be found when the injury results from a risk that is inherent in the employment or incidental to the discharge of the duties thereof. *Royall v. Industrial Commission,* 106 Ariz. 346, 476 P.2d 156 (1970). We find that claimant's injuries in this case were compensable because they arose from a risk incidental to the discharge of his duties as a truck driver.

■ Catalina urges that the following definition set forth in A.R.S. § 23–901(12)(b) precludes compensability in this case:

"12. 'Personal injury by accident arising out of, and in the course of employment' shall be defined as:

\*     \*     \*     \*     \*     \*

"(b) An injury caused by the wilful act of a third person directed against an employee *because of his employment,...*" (Emphasis added).

Since claimant's injuries arose from an assault by a robber whose motives were not related to any aspect of claimant's employment, Catalina urges that the assault could not have been directed against the employee *because of his employment.* In our opinion this exclusive reliance on the motive of the assailant improperly disregards possible risks and dangers that may be inherent in and incidental to a truck driver's employment environment. This improper fixation on the motives of the assailant is likewise demonstrated in the Special Fund's brief as follows:

"In the instant case, the assault occurred because the claimant stumbled upon a robbery not in any way related to his employment relationship."

While the motives of the robbers and the robbery itself might not have been related to claimant's employment, claimant's "stumbling" was. There is no contention raised here that claimant was not engaged in the duties of his employment at the time of the assault, and was not at a place where his employment required him to be. In *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597 (Tenn.1979), in considering the compensability of injuries suffered by a truck driver from an assault (unknown motive) as he was returning to his truck after purchasing his lunch, the court stated:

> "In our leading assault cases, the Court appears to have focused on the motive of the assailant and disregarded any risk that may have been incidental to the employment environment. We think the correct resolution of this case involves a consideration of the risks and dangers inherent in a truck driver's employment, rather than the objective of the assailants. No one can quarrel with the conclusion that a truck driver for a motor freight carrier is exposed to the hazards of the streets and highways to a substantially greater extent than is common to the public. That is the basis for the street-risk rule, which simply stated, is that the risks of the street are the risks of the employment, if the employment requires the employee's use of the street."
>
> 593 S.W.2d at 602.

We can see no valid basis for distinguishing the case at hand from the result reached by the court in *Hudson*. Here no meaningful distinction can be made between the self-service truck stop premises and an actual "street" insofar as concerns the rationale of the street-risk doctrine as it has developed. The exposure to the increased hazards resulted from the demands of claimant's employment, and to that extent the assault occurred "because of claimant's employment." In our opinion that relationship, although indirect, is sufficient to meet the requirements of A.R.S. § 23–901(12)(b).[4] We therefore conclude that the administrative law judge did not err in finding that claimant's injuries arose out of his employment.

■ Catalina's final contention is that the award must be set aside because no expert medical testimony was presented to relate claimant's physical condition to the accident in question. This contention is based upon a misconception of the nature of the proceedings which resulted in the administrative law judge's award. The only issue involved at this initial stage in the proceedings was compensability, i.e., whether the claimant had suffered an injury by accident arising out of and in the course of his employment. The nature and extent of his specific injuries and their causal relationship to the industrial accident remain to be determined, and of course the resolution of such questions must be the subject of expert medical testimony. *See Yates v. Industrial Commission*, 116 Ariz. 125, 568 P.2d 432 (App.1977); *Eldorado Insurance Co. v. Industrial Commission*, 27 Ariz.App. 667, 558 P.2d 32 (1976). Where the only question to be determined is compensability, and the alleged accident has immediately resulted in physical injuries obvious to a layman, there is no requirement that expert medical testimony be introduced concerning those injuries at the initial compensability stage of workmen's compensation proceedings.

The award is affirmed.

EUBANK and CONTRERAS, JJ., concur.

---

4. Contrary to Catalina's contentions, we find nothing in Article 18, § 7, Constitution of Arizona, 1 A.R.S., which would limit the maximum scope of legislatively enacted workmen's compensation liability to the minimum required by constitutional provision.