KRAL v PATRICO'S TRANSIT MIXING COMPANY

Docket No. 105889. Submitted March 8, 1989, at Detroit. Decided
November 20, 1989. Leave to appeal applied for.

Joseph Kral was injured while in the course of his employment
with Clawson Concrete Company. The injury occurred at a
concrete mixing plant which Clawson had leased from Patrico's
Transit Mixing Company and allegedly was caused when the
equipment on which Kral was working was activated by Sebas-
tian Bommarito. Bommarito had been employed by Patrico's to
operate the plant and, as part of the lease agreement, had come
along with the plant as its operator. Joseph Kral and his wife
brought a personal injury action in Macomb Circuit Court
against Patrico's Transit and others. With respect to Patrico's,
plaintiffs alleged that at the time of the accident Bommarito
remained an employee of Patrico's and that Patrico's was thus
vicariously liable through the application of the doctrine of
respondeat superior. Patrico's moved for summary disposition
and argued that at the time of the accident Bommarito was
employed by Clawson and was thus a fellow employee of
plaintiff Joseph Kral, making workers' compensation Kral's
exclusive remedy. The trial court, John B. Bruff, J., analyzing
the situation under the economic reality test, held that the
only reasonable inference that could be drawn was that Bom-
marito, at the time of the accident, was an employee of Claw-
son and a fellow employee of Kral and that, accordingly,
Patrico's could not be held vicariously liable. Plaintiffs ap-
pealed from the order of summary disposition in favor of
Patrico's.

    The Court of Appeals held:

    1. Where, as here, consideration of the question of the exis-
tence of an employer-employee relationship arises out of a
claim for damages against the employer on the basis of the
application of the doctrine of respondeat superior, the test to be

REFERENCES

Am Jur 2d, Master and Servant § 326; Workmen's Compensation
§§ 66, 67.
Liability under respondeat superior doctrine for acts of operator
furnished with leased machine or motor vehicle. 17 ALR2d 1388.

used to determine that relationship is the traditional common-law control test. The economic reality test is to be used where workers' compensation benefits are at issue.

2. There existed under the facts pled a genuine issue of disputed fact as to whether at the time of the accident Bommarito remained an employee of Patrico's.

3. Even if Joseph Kral and Bommarito were coemployees of Clawson, Patrico's would remain vicariously liable to plaintiff if it continued to exercise joint control over Bommarito, since Bommarito's personal immunity from tort liability would not preclude Patrico's from being held liable on the basis of the application of the doctrine of respondeat superior.

Reversed and remanded.

1. MASTER AND SERVANT — VICARIOUS LIABILITY — CONTROL TEST.

The proper test to delineate the master-servant relationship in an action against an employer based upon its vicarious liability for the acts of an employee is the control test rather than the economic reality test.

2. MASTER AND SERVANT — TORTS — RESPONDEAT SUPERIOR — CONTROL TEST.

The control test for determining whether the loaned servant doctrine applies in a case is whether in the particular service in which the servant is engaged or requested to perform he continues to be liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired or who requests his services; it is not so much the actual exercise of control as the right to exercise control; to escape liability the original master must resign full control of the servant for the time being; it is not sufficient that the servant is partially under the control of a third party.

3. MASTER AND SERVANT — TORTS — LOANED EMPLOYEES — CONCURRENT CONTROL — VICARIOUS LIABILITY.

An employer who provides an employee to another but who retains partial concurrent control over that employee may remain vicariously liable for the torts of the loaned employee even though the loaned employee may be personally immune from liability.

*Buckfire & Buckfire, P.C.* (by *David Buckfire*), for plaintiffs.

*Wendt, Wendt & Van Eman* (by *John C. Candela*), for Patrico's Transit Mixing Company.

Before: McDONALD, P.J., and SULLIVAN and
NEFF, JJ.

NEFF, J. This is a personal injury action in
which plaintiffs seek to hold defendant Patrico's
Transit Mixing Company vicariously liable for the
alleged negligence of a third party, Sebastian Bommarito. Plaintiffs appeal as of right from an order
granting summary disposition to Patrico's pursuant to MCR 2.116(C)(10). We reverse.

Plaintiff Joseph Kral, an employee of Clawson
Concrete Company, was injured while in the
course of his employment. The injury occurred at
a concrete mixing plant which Clawson leased
from Patrico's. Plaintiffs claim that the injury was
caused when the equipment on which Kral was
working was activated by its operator, Sebastian
Bommarito. Plaintiffs allege that Bommarito was
an employee of Patrico's, and they seek to hold
Patrico's vicariously liable for Bommarito's alleged
negligence. Patrico's, however, contends that Bommarito was employed by Clawson and that Kral
was a fellow employee of Bommarito. Therefore,
Patrico's argues, workers' compensation is Kral's
exclusive remedy. The key issue in the lower court
was the status of Bommarito.

I

Patrico's owned the P & L Mixing Plant where
Kral was injured. Patrico's and Clawson entered
into a lease agreement under which Clawson
would operate the mixing plant for several months
for its own use, but would also load Patrico's
trucks as needed. As part of the agreement, Bommarito, who had previously operated the plant for
Patrico's and who was familiar with it, would
operate the plant as batchman for Clawson. No

Clawson employee was familiar with the operation of that plant. Patrico's also wanted Bommarito to remain at the P & L plant so that Patrico's, which was still using the plant, would have an operator familiar with its mixes.

Patrico's continued to pay Bommarito's wages, benefits, and unemployment insurance, but was reimbursed in full for those expenses by Clawson. Clawson set Bommarito's work hours and supervised his daily activities at the plant.

Patrico's is a subsidiary of Sterling Concrete Products. John Patrico, the president of Sterling Concrete Products, hired Bommarito.

John Patrico's deposition testimony reveals that Bommarito was placed at the P & L plant at least in part because of his familiarity with Patrico's specific mixes. According to Patrico, Patrico's set Bommarito's wages, and Bommarito chose to be an employee of Patrico's. Patrico also testified that, even while Bommarito was working for Clawson, he maintained control over Bommarito, and he "absolutely" considered Bommarito to be his employee. At the time of Kral's injury, Patrico's was using the P & L plant as much as Clawson was using it.

Patrico described Bommarito as "our key man" when the plant was leased to Clawson. He made it clear that the lease was on a temporary basis and described the arrangement as "my plant went to them [Clawson] with the employee [Bommarito] to run it."

Sebastian Bommarito testified that he punched two time cards, one for Patrico's and one for Clawson. When asked at deposition how he happened to be working at the P & L plant, Bommarito answered: "Well, Mr. Patrico sent me over there to load trucks. . . . He just said go over there, you're going to load trucks for Clawson and

you're going to load our trucks also when they come over."

The deposition testimony of Donald Kinderman, the vice-president of operations for Clawson, revealed that Clawson used Bommarito's time card to check against the billing they received from Patrico's. Kinderman also testified that Clawson determined Bommarito's hours, vacations, and sick days and that Bommarito could be disciplined by Clawson's plant manager. Kinderman, however, did not consider Bommarito to be an employee of Clawson, but of Patrico's, because Bommarito was not on Clawson's seniority list and because if they had a labor problem with Bommarito they would contact Patrico's. Only Patrico's could fire Bommarito.

Kinderman also testified that Clawson is a union shop. If Bommarito had been hired by Clawson and placed on its seniority list as required, he could not have operated the P & L plant as batchman. According to Kinderman, Clawson's seniority list would have required that its regular batchman operate the P & L plant if Bommarito had been hired by Clawson.

Kinderman also testified that Bommarito was not covered by any health plan maintained by Clawson, and that Clawson does not have any employment records concerning Bommarito. The record shows that Patrico's maintains Bommarito's employment records and would be responsible for unemployment compensation if Bommarito were to be laid off.

II

One of two tests may be used in determining whether a worker is an employee of a particular employer. Which test is applicable is determined

by the underlying legal basis of the claim being advanced.

Where workers' compensation benefits are an issue, the economic reality test is applied. *Wodogaza v H & R Terminals, Inc,* 161 Mich App 746, 752; 411 NW2d 848 (1987), lv den 429 Mich 873 (1987). That test includes four factors, one of which is control. That is the test applied by the trial court in this case.

The second test applicable in the employer-employee situation is the control test. In cases involving vicarious liability, this is the proper test to be applied.

The control theory was the traditional test used at common law to delineate the master-servant relationship. The purpose of the control test is to define and limit the scope of the master's liability under the doctrine of respondeat superior. *Nichol v Billot,* 406 Mich 284, 293-294; 279 NW2d 761 (1979). In *Nichol, supra,* p 297, our Supreme Court stated:

> The adoption of the control test at common law in order to determine the applicability of the servant concept was limited to those situations where the question was whether it was appropriate to apply the theory of *respondeat superior.*

In *The Hartford Ins Group v Mile High Drilling Co,* 96 Mich App 455, 460; 292 NW2d 232 (1980), a panel of this Court concluded, on the basis of *Nichol,* that application of the control test was appropriate in that case because it involved a question of respondeat superior liability. See also *Noble v Roadway Express, Inc,* 153 Mich App 12, 18-19; 394 NW2d 128 (1986), lv den 428 Mich 885 (1987); *Parham v Preferred Risk Mutual Ins Co,* 124 Mich App 618, 623-624; 335 NW2d 106 (1983).

The control test was articulated by our Supreme Court in *Janik v Ford Motor Co,* 180 Mich 557, 562; 147 NW 510 (1914), as follows:

> The test is whether in the particular service which he is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded, as the right to exercise such control. To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under control of a third person. Subject to these rules the original master is not liable for injuries resulting from acts of the servant while under the control of a third person.

In finding that Bommarito was acting as an employee of Clawson at the time of Kral's injury and that plaintiffs' claim against Patrico's should be dismissed, the trial court utilized the economic reality test. This was error. Here, because plaintiffs sought to hold Patrico's vicariously liable for Kral's injuries under the doctrine of respondeat superior, the control theory was the proper test to apply. However, as will be discussed *infra,* under either the economic reality test or the control test, summary disposition was improperly granted in favor of Patrico's.

III

In dismissing plaintiffs' claim against Patrico's, the trial court found that the only reasonable inference that could be drawn from the evidence was that Bommarito was acting as an employee of Clawson at the time of Kral's injury. We disagree

and hold that, at a minimum, there is factual support for plaintiffs' claims that Bommarito was and remained an employee of Patrico's at the time of the accident which injured Joseph Kral. This would be true whether the control test or the economic reality test was to be applied to determine the employment relationship of Bommarito vis-a-vis Clawson and Patrico's. Where a jury may draw conflicting inferences from undisputed facts, summary disposition under MCR 2.116(C)(10) is improper. Accordingly, it was error for the trial court to grant summary disposition in favor of Patrico's on the record before it.

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988).

The party opposing the motion has the burden of showing that a genuine issue of disputed fact exists. *Dumas, supra.* The nonmovant may not rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Metropolitan Life Ins Co v Reist,* 167 Mich App 112, 118; 421 NW2d 592 (1988), lv den 431 Mich 877 (1988). Giving the benefit of reasonable doubt to the nonmovant, the court must determine whether a record might be developed which would leave open an issue upon which reasonable minds could differ. *Dumas, supra.* All inferences are to be drawn in favor of the nonmovant. *Dagen v Hastings Mutual Ins Co,* 166 Mich App 225, 229; 420 NW2d 111 (1987), lv den 430 Mich 887 (1988). Before judgment may be granted, the court must be satisfied that it is impossible for the claim

asserted to be supported by evidence at trial. *Peterfish v Frantz,* 168 Mich App 43, 48-49; 424 NW2d 25 (1988).

Application of these standards and the control theory to the facts of this case leads us to the firm conclusion that the trial court erred in granting summary disposition to Patrico's.

IV

A parallel line of reasoning leads us to the same conclusion. In *Kenyon v Second Precinct Lounge,* 177 Mich App 492; 442 NW2d 696 (1989), a panel of this Court considered an analogous issue involving a labor broker. In that case, the plaintiff was injured in the course of his employment with Tuff-Kote, Inc. The plaintiff was a regular employee of Tuff-Kote while the tortfeasor was employed by a labor broker who was hired out to Tuff-Kote. The trial court held that, under those circumstances, the plaintiff and the tortfeasor were coemployees of Tuff-Kote and that the tortfeasor was immune from tort liability under the exclusive remedy provision of the workers' compensation act.

However, on appeal it was held that the labor broker was not entitled to derivative immunity from tort liability for the negligent acts of its employee, the tortfeasor. *Kenyon, supra,* p 505. The panel declined to extend the statutory immunity afforded the coemployee to the general employer, the labor broker. The panel in *Kenyon* cited extensively from *Marsh v Tilley Steel Co,* 26 Cal 3d 486; 162 Cal Rptr 320; 606 P2d 355 (1980), a case which is factually on point with the situation which existed between the parties here.

We are persuaded by the reasoning so well expressed in *Kenyon and Marsh.* Even if Kral and

Bommarito were coemployees of Clawson, as defendants argue, it is clear that Bommarito probably was an employee of Patrico's also. In that situation, while Bommarito would be personally immune to tort liability for his actions, Patrico's would not be entitled to derivative immunity for Bommarito's tortious actions.

V

Reversed and remanded to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.