925 P.2d 693

Robert L. McDANIEL and Maridel McDaniel, husband and wife, Plaintiffs–Appellees,

v.

TROY DESIGN SERVICES COMPANY, an Arizona corporation, Defendant–Appellant.

No. 1 CA–CV 94–0031.

Court of Appeals of Arizona, Division 1, Department C.

March 19, 1996.

Review Denied Oct. 21, 1996.*

---

Junker, Penfield, Shiaras & Harrington by Michael P. Shiaras and Cord & Shoush by Mark W. Shoush and Toby Zimbalist, Phoenix, for plaintiffs-appellees.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Steven D. Smith, Christopher Robbins, Phoenix, for defendant-appellant.

## OPINION

TOCI, Judge.

Troy Design Services Company ("Troy Design") appeals from the trial court's entry of summary judgment against it. The trial court concluded that Troy Design's employee, Rhett Schaller, was a "lent employee" under the exclusive control of General Motors Corporation ("GM"). Nevertheless, the trial court ruled that Troy Design was vicariously liable for Schaller's negligence in harming a fellow employee working at GM.

■ The issue before us is whether a general employer can be held vicariously liable for the negligent actions of a lent employee in the exclusive control of a special employer. We hold that a general employer is vicariously liable for the tortious conduct of a lent employee only if the general employer has control of or the right to control the performance of the lent employee's work. Because the trial court found that the lent employee was under the exclusive control of GM, we reverse and remand for entry of judgment in favor of Troy Design.

### I. FACTS AND PROCEDURAL BACKGROUND

In November 1988, Robert McDaniel was riding in a cart driven by Schaller on the GM

proving grounds. The cart was involved in an accident with a parked vehicle. As a result of the accident, McDaniel suffered serious injuries that culminated in the amputation of his leg.

When the accident occurred, both men were employed by labor brokers. McDaniel was employed by Kett Engineering and Schaller by Troy Design. The services of both men had been furnished to GM by their respective employers, under contract, and both employees were assigned by their employers to work at the GM proving grounds.

The day of the accident, McDaniel and Schaller were assigned by their supervisor at GM to transport tires and wheel assemblies to the tire shop. After the assignment was completed, Schaller ran into a parked vehicle, causing McDaniel's injuries. McDaniel filed this personal injury action naming Troy Design, GM, and Schaller as defendants. McDaniel sought to hold Troy Design liable for the negligence of its lent employee, Schaller, under the doctrine of respondeat superior.

Defendants filed a joint motion for summary judgment. McDaniel filed a cross-motion for summary judgment on the issue of Troy Design's vicarious liability. The trial court granted summary judgment in favor of GM and Schaller, dismissing them from the lawsuit.[1] It also granted McDaniel's cross-motion, entering summary judgment against Troy Design on the issue of its vicarious liability for any negligence attributable to Schaller. Troy Design moved for a new trial, asking that the court reconsider its ruling. The trial court denied the motion. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

■ Summary judgment "should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Appellate courts review summary judgments on the basis of the record made in the trial court. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App. 1990). The determination of whether summary judgment was proper is essentially de novo. *Id.*

### B. Vicarious Liability for the Acts of Lent Employees

■ Vicarious liability "rests upon the employment of the servant by the master and the master's right to exercise direction and control over his work in the conduct of his business." *Ray v. Tucson Medical Ctr.*, 72 Ariz. 22, 33, 230 P.2d 220, 227 (1951). "[G]ain or profit has no reasonable relation to the doctrine...." *Id.* The ability to control an employee's actions in the performance of his work is the foundation of an employer's liability for its employee's torts.[2]

Arizona follows the "control or right to control" test to determine if a general employer is vicariously liable for the negligent acts of a lent employee. *Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 136, 65 P.2d 35, 37–38 (1937); *see also Larsen v. Arizona Brewing Co.*, 84 Ariz. 191, 198, 325 P.2d 829,

1. The trial court concluded that, as a matter of law, GM had become the "special employer" of both McDaniel and Schaller and therefore that workers' compensation was McDaniel's exclusive remedy against those two defendants.

2. A competing theory of justification for vicarious liability is the enterprise theory. This theory is based upon the allocation of risk. It is founded on the proposition that companies engaged in a business are best able to distribute the risk of loss from that particular business to their consumers through pricing mechanisms. Consequently, an employer should be held vicariously liable for any loss caused by an employee in the course of business, regardless of the control over the employee. Some jurisdictions have adopted this approach in the lent servant context. *See, e.g., Strait v. Hale Constr. Co.*, 26 Cal.App.3d 941, 949, 103 Cal.Rptr. 487 (1972); *Bright v. Cargill, Inc.*, 251 Kan. 387, 837 P.2d 348, 363 (1992); *Volb v. G.E. Capital Corp.*, 139 N.J. 110, 651 A.2d 1002, 1013 (1995). This theory is also reflected in the Restatement (Second) of Agency. Restatement (Second) of Agency § 227, cmt. d (general employer is responsible as a master if the act is within the scope of his general employment). Arizona, however, has never adopted this theory and plaintiff does not urge us to do so.

834 (1958).[3] "The key word is 'control', [sic] which relates to the right of control over the performance of the work to the extent of prescribing the manner in which it is to be executed." *Williams v. Wise,* 106 Ariz. 335, 338, 476 P.2d 145, 148 (1970). Consequently, if a general employer does not have actual control over or the right to control the performance of a lent employee's work, the general employer cannot be held vicariously liable for the acts of the lent employee.

█ Here, the trial court found that it was clear from the record that GM had the right to control the actual work done by Schaller on a day-to-day basis. According to the trial court, "the control and supervision of these employees was *exclusively* with General Motors Corporation." (Emphasis added.) We agree with the trial court's finding.

The evidence is undisputed that GM had the exclusive right to control Schaller's work activities at the GM proving ground. According to Schaller, all the supervision of his daily work activities was done by GM employees. Joseph Mitchell, President of Troy Design, stated that GM was in charge of all of Schaller's working conditions at the proving grounds, including where, when, and how to work. Although Richard Reed, Troy Design's regional manager at the time of the accident, stated that he was on site two to three times a week to handle administrative matters, he testified that he never directed actual work activities.

## C. McDaniel's Arguments

McDaniel makes three arguments in favor of affirming the entry of summary judgment against Troy Design. First, McDaniel argues that the facts of this case establish Troy Design's concurrent control of Schaller's actions. Second, McDaniel contends that the law provides that a servant can have two masters, both vicariously liable for his actions. Finally, he asserts that GM's control of Schaller did not negate his employment relationship with Troy Design, who retained

the right to control Schaller. Consequently, McDaniel concludes, Troy Design can be vicariously liable for Schaller's negligence. We examine these arguments in turn.

### 1. Troy Design Had Concurrent Control

█ McDaniel contends that the undisputed facts of this case establish Troy Design's concurrent control of Schaller. McDaniel first points to the contract between GM and Troy Design which provides that Troy Design was responsible (1) to hire and fire employees, (2) to require employee compliance with GM work rules, (3) to sign time records, and (4) to comply with equal employment opportunity laws. Additionally, McDaniel argues that Troy Design had the right to reassign employees from the proving grounds to other clients and the right to withdraw employees from GM, provided that they were replaced at GM's option. Finally, according to McDaniel, Troy Design's regional manager, Reed, went to the proving grounds at least twice a week to resolve employee problems.

These facts presented by McDaniel do not establish the elements necessary to charge Troy Design with vicarious liability. Although Troy Design had some degree of control over its employees assigned to GM, the *sine qua non* of vicarious liability—the control or right to control by Troy Design over the assigned employees' work performance at GM—is lacking. Once GM had the exclusive right to control Schaller in the performance of his duties at GM, Troy Design was no longer vicariously liable for Schaller's negligence. See *Hartford Ins. Group v. Mile High Drilling Co.,* 96 Mich.App. 455, 292 N.W.2d 232, 235 (1980) (test is whether in the particular service performed the lent employee becomes subject to the control of employer to whom employee is loaned).

### 2. A Servant Can Have Two Masters

McDaniel next contends that a servant may have two masters, so long as each exer-

---

**3.** In discussing the determination of whether an employer has control over a lent employee, both parties cite *Throop v. F.E. Young & Co.,* 94 Ariz. 146, 382 P.2d 560 (1963). *Throop,* however, was an independent contractor case. Because the determination of whether an employee is a servant or an independent contractor is not relevant to the question of vicarious liability for a lent servant, we do not find *Throop* persuasive.

cises control and the servant furthers the interests of both. We agree with McDaniel that a servant can have two masters and that each of them may be vicariously liable for his actions. In this case, however, GM possessed the exclusive right to control the performance of the lent employee's work. Thus, Troy Design did not have the joint right to control the performance of Schaller's work at GM.

McDaniel cites *Lee Moor* and the Restatement (Second) of Agency, § 227 (1958), for the proposition that as long as Schaller was "furthering the business" of Troy Design, a labor broker, Troy Design is vicariously liable. Although *Lee Moor* contains language supporting McDaniel's argument, that language must be read in context. Immediately following the language relied upon by McDaniel, the court in *Lee Moor* stated the following rule:

> [A]s long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation *unless command has been surrendered,* and no inference of its surrender from the mere fact of its division. *Charles v. Barrett,* 233 N.Y. 127, 135 N.E. 199, 200.
>
> Control or right to control determines liability.

*Lee Moor,* 49 Ariz. at 136, 65 P.2d at 37–38 (citation omitted) (emphasis added).

Here, the evidence is uncontroverted that Troy Design had surrendered to GM command of Schaller's performance at GM's proving grounds.

### 3. GM's Control Did Not Negate Troy Design's Employment Relationship with Schaller

■ McDaniel's third contention is that GM's extensive control of Schaller's work performance did not affect Schaller's employment relationship with Troy Design. McDaniel argues that a special employer's control over a lent employee's work activities

does not determine the lent employee's relationship with his general employer. Instead, McDaniel claims that, to avoid liability for Schaller's acts, Troy Design must have relinquished *all* control over Schaller to GM.

In support of McDaniel's argument, he emphasizes the following facts. First, Troy Design retained the right to hire and fire Schaller, the right to replace him at GM, and the responsibility for paying him and his workers' compensation insurance. Additionally, Troy Design had regular contact with its employees through a representative. Based on these facts, McDaniel contends that Troy Design retained sufficient indicia of control to hold it vicariously liable for Schaller's acts. We disagree.

Troy Design's control over the administrative aspects of Schaller's employment is insufficient to subject Troy Design to vicarious liability for his negligence in the performance of his work. As we have stated above, vicarious liability for a lent employee's tortious conduct results from the general employer's right to control the performance of the employee's work. See *Hartford,* 292 N.W.2d at 235 (test is whether *in the particular service loaned employee is performing* he continues under control of original employer). Here, reasonable people could not disagree with the trial court's conclusion that GM exclusively controlled the particular service Schaller performed at GM. *Orme Sch.,* 166 Ariz. at 309, 802 P.2d at 1008. As a result, Troy Design could not be vicariously liable for Schaller's actions.[4]

### III. CONCLUSION

We hold that in order for a general employer to be held vicariously liable for the negligent acts of a lent employee, the general employer must have control of or the right to control the performance of the employee's work. The uncontroverted facts of this case establish that Troy Design did not have such control over its lent employee. Consequently, it cannot be held vicariously liable for its

---

4. McDaniel cites *Word v. Motorola,* 135 Ariz. 517, 662 P.2d 1024 (1983), and *Special Fund v. Catalina Trucking Co.,* 134 Ariz. 585, 658 P.2d 238 (App.1982), as additional authority in support of his argument. As these cases are workers' compensation cases, they "are not necessarily authority for principles giving rise to common-law liability under the doctrine of respondeat superior." *Throop,* 94 Ariz. at 153, 382 P.2d at 564. Thus, we do not follow these cases here.

lent employee's negligent conduct. Accordingly, we reverse the entry of summary judgment against Troy Design by the trial court and remand with instructions to enter summary judgment in favor of Troy Design on the issue of vicarious liability.

VOSS, P.J., concurs.

FIDEL, Judge, dissenting.

The law is tugged in opposite directions in defining the vicarious liability of labor brokers—those in the business of supplying temporary labor to others. On the one hand, "loaned employees" are the labor broker's stock-in-trade. Working at their temporary posts, they further the labor broker's business; if they go about that business negligently, they do so in the course and scope of the very work the labor broker has hired them to perform. On the other hand, loaned employees are generally subject to direction at their temporary posts by their temporary employers. Though the essence of the labor broker's business is to profit from its loaned employees' labors, a common feature of that business is to pass control to the temporary employer over the immediate details of their work.

Because a transfer of control defines the course of the labor broker's business, there is no self-evident answer to the question whether the labor broker should bear vicarious liability for a loaned employee's tort. Is it more significant that the employee, at the time of the act, is furthering the labor broker's business, or more significant that, at the time of the act, he is outside the labor broker's immediate control? The answer to this question is not available by deduction; to provide an answer, the law must choose between competing rationales.

An early Arizona Supreme Court decision reflects both rationales. In *Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 65 P.2d 35 (1937), a general employer supplied a truck and driver for a gravel haul, the driver caused an accident, and the court considered on appeal whether the evidence supported the jury's assignment of vicarious responsibility to the temporary employer. The plaintiff had sued both employers; the jury had

absolved the general employer and allocated responsibility to the temporary employer alone; the temporary employer asserted on appeal that the trial court should have directed a verdict in its favor, attributing vicarious responsibility to the general employer alone. Although the court found the evidence "very unsatisfactory," *id.* at 139, 65 P.2d at 39, it ruled that the record contained sufficient evidence to submit to the jury the question whether the temporary employer had the right to control the driver at the time of his tort. *Id.* at 141, 65 P.2d at 39. Thus the court made the right to control the decisive test of a *temporary* employer's vicarious liability. Yet the court also took note of numerous "text-books and decisions sustaining the proposition, that as long as the employee is furthering the business of his *general* employer by service rendered to another he is the servant of the former." *Id.* at 135, 65 P.2d at 37 (emphasis added). The decision thus suggests that, had the question been the liability of the general employer, it would have sufficed to establish that the employee was "furthering the business of his general employer by service rendered to another."

*Lee Moor*'s recognition of a furtherance-of-business standard of vicarious liability for the general employer might be dismissed as dictum; the general employer was not a party to the appeal. Yet the issue of the general employer's vicarious liability was framed by the temporary employer's assertion that vicarious liability should be assigned to the general employer alone. And in a lengthy string of citations, the court demonstrated that a furtherance-of-business standard for general employers was well grounded in the cases and authorities of the time. *See id.*

The first of these authorities was the Restatement of Agency, which contemplates dual vicarious liability when the loaned employee acts within the course and scope of his general employment but subject to the direction of the temporary employer. Restatement of Agency § 227, comment d, provides:

*Where servant obeys temporary employer.* The servant may depart from the service of the general employer as to a given act either in accordance with the agreement between the general employer and

the other, or in spite of it. The fact that he obeys the requests of the temporary employer as to the act does not necessarily cause him to be the servant of such employer. If, however, the temporary employer exercises such control over the conduct of the employee as would make the employee his servant were it not for his general employment, the employee as to such act becomes a servant of the temporary employer. *If the employee does the very act directed by the temporary employer, the latter is responsible for having directed it, and the first employer is responsible as a master if the act is within the scope of his general employment.*

(Emphasis added.)

In four of the cases cited in *Lee Moor*, the courts gave substantial weight to a furtherance-of-business or scope-of-employment rationale. *See Thatcher v. Pierce*, 281 Pa. 16, 125 A. 302, 303 (1924); *Densby v. Bartlett*, 318 Ill. 616, 149 N.E. 591, 596 (1925); *Babbitt v. Say*, 120 Ohio St. 177, 165 N.E. 721, 725 (1929); *Independence Indemnity Co. v. Carmical & Woodring*, 13 La.App. 64, 127 So. 10, 11 (1930). In *Babbitt*, the Supreme Court of Ohio described as "crucial" the question, "Who was the master at the very time the negligent act complained of took place?" 165 N.E. at 724. Yet the court found the temporary employer's control over the driver's loading, unloading, and route of travel less significant than the general employer's power to hire, fire, designate, and pay the driver. *Id.* at 725. And most significant for present purposes, the *Babbitt* court identified as a distinguishing factor "[t]he fact that [the general employer] profited by the service of his employ[ee] ... and his truck." *Id.*

In *Densby*, the Supreme Court of Illinois found the general employer's power to discharge the employee was adequate to supply the element of control. But the court added:

[N]o one fact is decisive, and ... among other things to be considered is the business in which the general employer is engaged and that in which the special employer is engaged. There can be no question the driver of the car when appellee was injured *was performing the service he was employed to perform by the general employer.*

149 N.E. at 593 (emphasis added).

In *Independence Indemnity*, the Louisiana Court of Appeal found it only minimally important that the temporary employer controlled the loading operation in which the accident occurred; the court emphasized instead that the hiring-out of trucks and drivers was the regular business of the general employer. 127 So. at 11.

And in *Thatcher*, the Supreme Court of Pennsylvania expressly distinguished general employers in the "regular business" of lending truck and driver from those whose temporary loan was incidental to their "regular business." 125 A. at 303. The court stated:

[W]here one is engaged in the business of "hiring out trucks, and furnishing a driver as part of the hiring," when an accident happens in the course of that hiring the owner of the truck is liable in damages. The presumption is that if the injury happened while the driver was operating the truck, it was in the original master's business, as it occurred in doing the specific thing the driver was engaged by the owner to do, and to whom the driver was directly responsible.

*Id.*

The furtherance-of-business rationale reflected in these cases has not faded over time. Section 227, comment d of the original Restatement of Agency, quoted above, remains unchanged in the Restatement (Second) of Agency, which was published in 1958, and, as demonstrated in the cases that follow, retains support in case law around the country.

Many of the cases continue to arise from the torts of loaned equipment operators. *See Strait v. Hale Construction Co.*, 26 Cal. App.3d 941, 103 Cal.Rptr. 487 (1972); *LeJeune v. Allstate Ins. Co.*, 365 So.2d 471 (La.1978); *Viggiano v. William C. Reppenhagen, Inc.*, 55 N.J.Super. 114, 150 A.2d 40 (1959). But the furtherance-of-business rationale has not been limited to such cases. In one case, for example, a corporation whose business was to supply a film director for temporary employment with independent

film producers, remained subject to vicarious liability for the director's negligence, even though it lacked control of his conduct on the set. *Von Beltz v. Stuntman, Inc.*, 207 Cal. App.3d 1467, 255 Cal.Rptr. 755, 767 (1989) (finding it decisive that the director was acting within the scope of his general employment at the time of his tort). And in numerous cases, hospitals have been held to retain vicarious responsibility for the torts of residents, nurses, and other operating-room personnel, though at the time of surgery the employees had been "loaned" to an independent surgeon and were subject to the surgeon's supervisory authority and control. *See Foster v. Englewood Hosp. Assoc.*, 19 Ill.App.3d 1055, 313 N.E.2d 255, 259–60 (1974) ("It was a part of the hospital's business to furnish [physicians with] the use of [employees], and the fact that during the period of the operation [an employee is] subject to the direction of a physician does not change the relationship."); *City of Somerset v. Hart*, 549 S.W.2d 814, 817 (Ky.1977) (because the nurse's work is performed "to effect [the] common purpose" of the surgeon and the hospital, "respondeat superior is … equally applicable to both employers"); *Brickner v. Normandy Osteopathic Hosp.*, 746 S.W.2d 108, 114–15 (Mo.App.1988) ("at the time of surgery, [the resident] was performing the very work for which the hospital had hired and was paying him").

In cases involving labor brokers, or those regularly engaged in lending employees temporarily to others, some courts have abandoned the control test and explained their attribution of vicarious liability to the general employer in terms of risk allocation or enterprise liability. *See Strait*, 103 Cal.Rptr. at 492 ("The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business."); *see also Bright v. Cargill, Inc.*, 251 Kan. 387, 837 P.2d 348, 364 (1992); Note, *Borrowed Servants and the Theory of Enterprise Liability*, 76 Yale L.J. 807 (1967). Others have continued to apply the control test, but, as in

the *Lee Moor* cases previously discussed, have softened the element of control. For example, in *Kral v. Patrico's Transit Mixing Co.*, the court found, despite the temporary employer's supervisory authority over the employee's work at the time of injury, that there remained a jury issue whether the general employer retained concurrent control. The court observed:

> It is not so much the actual exercise of control which is regarded, as the right to exercise such control. To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under control of a third person.

181 Mich.App. 226, 448 N.W.2d 790, 793 (1989) (quoting *Janik v. Ford Motor Co.*, 180 Mich. 557, 147 N.W. 510, 512 (1914)); *see also Kenyon v. Second Precinct Lounge*, 177 Mich.App. 492, 442 N.W.2d 696 (1989).[5]

Whether the cases speak of enterprise liability, however, or look instead to general rudiments of control, a common element is the Restatement notion that vicarious liability should attach if the employee, at his temporary post, was furthering—and acting within the course and scope of—his general employer's business. As the Supreme Court of New Jersey recently decided,

> [I]f the causative act was within the service which the general employer agreed to furnish, he is responsible with respect to that act, no matter who directed its performance and without regard to the concurrent liability which may exist on the part of the one who issued the immediate order that the act be done.

*Volb v. G.E. Capital Corp.*, 139 N.J. 110, 651 A.2d 1002, 1012 (1995) (quoting *Devone v. Newark Tidewater Terminal, Inc.*,· 14 N.J.Super. 401, 82 A.2d 425, 432 (1951) (Schettino, J., concurring)). *But see Volb*, 651 A.2d at 1014 (Pollock, J., dissenting).

Many cases also accept as an economic reality that an employee in this context has two masters. As a Texas court sensibly observed,

---

5. The plaintiff in the present case, attempting to satisfy the control test, argues similarly that the general employer has sufficiently retained the right to exercise control as reflected in retention of the residual power to hire, fire, or replace.

The Biblical doctrine that one may only serve one master is followed in the law of the borrowed servant. However, unless the obligations to the masters conflict, so that the servant must choose between those obligations, the servant is usually fulfilling his obligations to both. Therefore, unless the servant has a dilemma regarding which master he should obey, there is no reason to exculpate one and bind the other vicariously for the sin of the servant.

*Lara v. Lile,* 828 S.W.2d 536, 538 n. 2 (Tex. App.1992); *see also* 5 Fowler V. Harper and Fleming James, Jr., *The Law of Torts,* § 26.11, 67–68 n. 14 (2d ed. 1986) ("The trouble with [control] tests is that commonly both employers have a measure of control and the business of both is being done.").

The Louisiana Supreme Court similarly observed that neither the temporary employer's supervision of the borrowed servant nor the temporary employer's susceptibility to vicarious liability

> should ... relieve the general employer of [concurrent] liability for his employee's negligent acts done in the pursuance of duties designated for him by his employer, in whose pay he continued and who had the sole right to discharge him. This is especially so ... where the employee was loaned out to another in a continuing arrangement between the employers for their mutual benefit.

*LeJeune,* 365 So.2d at 481; *see also City of Somerset,* 549 S.W.2d at 817; *Strait,* 103 Cal.Rptr. at 489; *Keitz v. National Paving & Contracting Co.,* 214 Md. 479, 134 A.2d 296, 301 (1957); *Gordon v. S.M. Byers Motor Car Co.,* 309 Pa. 453, 164 A. 334, 336 (1932).

I would hold similarly in this case. The control test may indeed be, as the majority describes it, the "sine qua non" to decide whether a *temporary* employer has assumed sufficient control to accept vicarious liability for the temporary employee's acts. But in the dual employer context, the law unduly binds itself by treating vicarious liability as an either/or proposition. Particularly when, as here, the general employer is in the business of supplying temporary labor and the employee is acting within the course and scope of that business, I see no reason to relieve the general employer of concurrent liability for his employee's negligent acts.

For these reasons, I respectfully dissent.