HOFFMAN v JDM ASSOCIATES, INC

Docket No. 173472. Submitted January 12, 1995, at Grand Rapids.
Decided September 15, 1995, at 9:40 A.M.

Duane Hoffman brought an action in the Ottawa Circuit Court
against JDM Associates, Inc., alleging that the defendant is
liable under the doctrine of respondeat superior for an injury
sustained by the plaintiff while working for Shape Corporation
when Gary Appel, Jr., a temporary worker supplied to Shape
by the defendant, ran over the plaintiff's foot with a forklift.
The court, Calvin L. Bosman, J., granted summary disposition
for the defendant. The plaintiff appealed.

The Court of Appeals *held:*

The defendant did not exercise or possess the requisite con-
trol over Appel to make it vicariously liable for Appel's actions.
Although the defendant paid Appel and had the right to
terminate his employment, the defendant did not exercise or
retain day-to-day control or supervision of Appel's specific work
activities at Shape Corporation.

Affirmed.

MASTER AND SERVANT — RESPONDEAT SUPERIOR — CONTROL TEST.

The control test for determination of liability of an employer for
the negligence of a borrowed employee under the doctrine of
respondeat superior is whether in the particular service in
which the employee is engaged the employee continues liable to
the direction and control of the original employer or becomes
subject to that of the employer to whom the employee is lent or
hired; to escape liability, the original employer must resign full
control of the employee for the time in question.

*McCroskey, Feldman, Cochrane & Brock, P.C.*
(by *Eric C. Lewis*), for the plaintiff.

*Rhoades, McKee, Boer, Goodrich & Titta* (by
*Gregory G. Timmer*), for the defendant.

REFERENCES

Am Jur 2d, Master and Servant § 415.
See ALR Index under Loaned Employees; Respondeat Superior.

Before: MacKENZIE, P.J., and GRIFFIN and NEFF, JJ.

GRIFFIN, J. In this tort action, we are again called upon to decide the scope of respondeat superior liability regarding a loaned servant. In doing so, we follow and reaffirm the control test as applied in *May v Harper Hosp,* 185 Mich App 548; 462 NW2d 754 (1990).

I

On August 8, 1990, plaintiff, Duane Hoffman, sustained personal injuries when his foot was run over by a forklift operated by Gary Appel, Jr. At the time of the accident, Hoffman was a permanent employee of Shape Corporation, while Appel was a temporary worker provided to Shape by defendant, JDM Associates, Inc., doing business as Manpower of Muskegon (Manpower). Plaintiff sought personal injury damages against defendant Manpower on the basis of the doctrine of respondeat superior.

The circuit court granted summary disposition in favor of Manpower, holding that defendant had not retained sufficient control over Appel to make it vicariously liable. Plaintiff now appeals. We affirm.

II

In his complaint, plaintiff claims that Appel's negligence "is imputable to defendant as a matter of law [under] the doctrine of respondeat superior." On appeal, plaintiff concedes in his brief that there is no disagreement regarding relevant facts or the applicable law:

> For purposes of this summary disposition mo-
> tion, there was no significant disagreement be-
> tween the parties as to the facts. And there was no
> significant disagreement on the applicable law.

While the law on this issue is well defined, the
parties sharply dispute the application of the law
to the facts. Under such circumstances, summary
disposition is appropriate. *Moll v Abbott Labora-
tories,* 444 Mich 1, 26-28; 506 NW2d 816 (1993).

Despite some confusion in the past, it is now
clear that for employer-employee issues in the
worker's compensation arena, the economic reality
test is used; for cases in tort, the control test is
applied. This dichotomy was summarized by our
Court in *Kral v Patrico's Transit Mixing Co,* 181
Mich App 226, 231; 448 NW2d 790 (1989):

> Where workers' compensation benefits are an
> issue, the economic reality test is applied. *Wodo-
> gaza v H & R Terminals Inc,* 161 Mich App 746,
> 752; 411 NW2d 848 (1987), lv den 429 Mich 873
> (1987). That test includes four factors, one of
> which is control. That is the test applied by the
> trial court in this case.
>
> The second test applicable in the employer-em-
> ployee situation is the control test. In cases involv-
> ing vicarious liability, this is the proper test to be
> applied.
>
> The control theory was the traditional test used
> at common law to delineate the master-servant
> relationship. The purpose of the control test is to
> define and limit the scope of the master's liability
> under the doctrine of respondeat superior.

In *Janik v Ford Motor Co,* 180 Mich 557, 562;
147 NW 510 (1914), the Supreme Court defined the
control test as follows:

> The test is whether in the particular service

which he is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded, as the right to exercise such control. To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under control of a third person. Subject to these rules the original master is not liable for injuries resulting from acts of the servant while under the control of a third person.

Later, in *Nichol v Billot,* 406 Mich 284, 296; 279 NW2d 761 (1979) (quoting with approval 1B Larson, Workmen's Compensation Law, § 43.42, pp 8-10, 8-11), the Supreme Court articulated the following rationale for the control test:

"The 'servant' concept at common law performed one main function: to delimit the scope of a master's vicarious tort liability. This tort liability arose out of detailed activities carried on by the servant, resulting in some kind of harm to a third person. *The extent to which the employer had a right to control these detailed activities was thus highly relevant to the question whether the employer ought to be legally liable for them.*" [Emphasis added.]

In *Hartford Ins Group v Mile High Drilling Co,* 96 Mich App 455; 292 NW2d 232 (1980), we applied the above principle in affirming a trial court's finding of fact that an employer had not retained sufficient control over his loaned servant to be held vicariously liable. Later, in both *Kral, supra,* and *Kenyon v Second Precinct Lounge,* 177 Mich App 492; 442 NW2d 696 (1989), we found genuine issues of material fact that made sum-

mary disposition inappropriate. However, in *May v
Harper Hosp, supra,* the facts were undisputed
and, therefore, the resolution of the issue of vicari-
ous liability was a matter of law. In the present
case, which similarly involves undisputed facts, we
find *May* to be most instructive.

In *May,* a Harper Hospital student medical tech-
nician committed an alleged act of malpractice
while working as a temporary employee at Henry
Ford Hospital. The plaintiff's decedent sued Har-
per Hospital in tort, claiming that the defendant
was vicariously liable for the technician's malprac-
tice. Harper Hospital moved for summary disposi-
tion, arguing that it lacked sufficient control of the
technician at the time of the alleged malpractice.
The trial court denied the defendant's motion. On
appeal, this Court reversed and held that the
lower court erred in failing to grant summary
disposition in favor of the defendant. In applying
the control test, this Court reasoned as follows:

> When Parekh suffered his fatal injury, Harper
> had relinquished its right to control Crowe [the
> technician]. Crowe was under the supervision of
> Fried and Klar, Henry Ford employees. She was
> using Henry Ford's machines and equipment. See
> *Janik, supra* at 563. Crowe had been instructed,
> before she began her rotation, to conduct herself
> according to Henry Ford's, not Harper's, protocols.
> No other Harper employees were present, and
> even if others had been present they would not
> have been allowed to go into Henry Ford's operat-
> ing room and give instructions to a student on
> rotation.
>
> *   *   *
>
> We are not persuaded that Harper's instruction
> of a student in Henry Ford's protocol before the
> rotation began deprived Henry Ford of its right to
> control the student during rotation. Harper's re-
> sponsibility for monitoring and enforcing the stu-

dent's compliance with Henry Ford's protocol was accomplished only through Henry Ford's own actions in monitoring the students. In addition, the statement in the agreement that Crowe was to be regarded as Harper's employee appears to have been for the purpose of limiting a student's entitlement to the benefits and other rights to which Henry Ford's own employees were entitled. Moreover, Crowe's status as Harper's employee was inherent in her status as a loaned servant.

*    *    *

The evidence relevant to Henry Ford's control, and Harper's lack of control, over Crowe simply did not present a material issue of fact upon which reasonable minds could differ. See *Reeves [v Cincinnati, Inc,* 176 Mich App 181; 439 NW2d 326 (1989)] *supra* at 183. The trial court erred in denying Harper's motions for summary disposition and for a directed verdict. [185 Mich App 548, 553-555.]

### III

In the present case, plaintiff claims that the following facts establish defendant's control over Mr. Appel at the time of the accident:

1. Manpower, not Shape Corporation, paid with its funds and monies all the temporary worker's wages, fringe benefits, and withholdings required by law. . . .

2. Manpower specifically retained the ability to *discipline* the temporary worker, *based upon his conduct in the workplace.* . . .

3. Manpower specifically retained the right to *fire or terminate* the temporary worker for the following specific reasons:

A. To terminate employment if lack of dependable transportation interferes with the work assign-·· ment;

B. To terminate employment if the employee does not have a telephone working;

C. To terminate employment if the employee fails to complete or show up for a job without advance notice to Manpower;

D. To terminate employment if the employee gives any false information in his application to Manpower;

E. To terminate employment if the employee is under the influence of alcohol or drugs when on assignment;

F. To terminate employment if the employee fails to submit to physical examinations ordered by Manpower or fails to cooperate with drug testing ordered by Manpower.

G. To terminate employment if the employee commits *any infraction* of any of the "conditions of employment," "policies," or "rules" of Manpower.
. . . .

4. Manpower reserved in writing its right to fire or terminate the temporary worker "at any time for any cause or no cause." . . .

5. Manpower specifically reserved the right to do its own drug or alcohol testing on the temporary worker, in or out of the workplace. . . .

6. Manpower specifically reserved the right to order the temporary worker to undergo physical and medical examinations. . . .

7. Manpower specifically reserved to itself final authority on *all* employment related matters. "[I]ts decisions on all employment related matters are final." . . .

8. The temporary worker is required to give Manpower advance notice of any absences or failure to show up at work. . . .

9. Manpower specifically reserved the right to conduct and require safety training of its temporary workers, did such training, had an enforcement program for work-site safety, and reserved the right to discipline for infractions (in the workplace) with "verbal warning, suspension or termination." . . .

10. Manpower specifically reserved and exercised its right to inspect each work site with its own

employees and agents, and then specifically approve or disapprove, prohibit or allow its temporary workers to work at specific locations, operations or machines within a customer's plant. . . .

11. Any temporary worker injured at the customer's job site must have Manpower's own Accident Report completed by his supervisor. . . . [Emphasis in original.]

To this list should be added the fact that Shape Corporation trained Mr. Appel on the forklift. Shape also administered written and practical tests that Mr. Appel was required to pass before operating a forklift. Only after Mr. Appel passed the tests did Shape issue Appel a forklift license. Finally, when Mr. Appel reported to work each day, he was given a specific job assignment by his Shape Corporation supervisor.

## IV

We agree with the lower court that, like the situation in *May,* defendant Manpower did not exercise or possess the requisite control to make it vicariously liable for the actions of its loaned servant. Although defendant paid Appel and possessed the right to terminate his employment, defendant did not exercise or retain any day-to-day control or supervision of his specific work activities. On the contrary, Shape Corporation was the sole entity that exercised and retained control over the daily work activities of Mr. Appel. Because defendant Manpower did not exercise or possess the right to control the *"detailed activities"* of Appel while he was working in the Shape plant, the rationale for imposing respondeat superior liability simply does not exist. *Nichol, supra.* For this reason, we affirm and hold that the lower court properly granted summary disposition in favor of defendant.

Affirmed.