*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JANE DOE, by next friend GEORGEIA
KOLOKITHAS,

        Plaintiff-Appellant,

v

ALPENA PUBLIC SCHOOL DISTRICT and
ALPENA BOARD OF EDUCATION,

        Defendants-Appellees.

FOR PUBLICATION
December 22, 2022
9:05 a.m.

No. 359190
Alpena Circuit Court
LC No. 2019-009053-NZ

Before: PATEL, P.J., AND CAMERON AND LETICA, JJ.

CAMERON, J.

In this case of first impression, plaintiff alleged that defendants had created a sexually-hostile educational environment in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 *et seq.* According to plaintiff, defendants did not adequately respond to several incidents of student-on-student sexual harassment at an elementary school. Defendants contended that student-on-student sexual harassment is not actionable under the ELCRA and, even if it was, plaintiff had failed to satisfy the elements of her hostile-environment claim. We conclude that the trial court erred when it held that student-on-student sexual harassment claims are not actionable under the ELCRA. We also determine that the trial court did not err when it granted summary disposition to defendants under MCR 2.116(C)(10). We therefore affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises from several incidents between minors, "Jane Doe" and "John Roe." During the 2016-2017 school year, Jane and John were fourth-grade students assigned to the same classroom at Besser Elementary School ("Besser") in the Alpena School District. John has a profound speech and language disorder which severely impacts his ability to communicate with others. As a result, John was placed on an individualized education plan ("IEP") and he received special education services. These services included a full-time instructional aide who was tasked with communication assistance and "behavioral redirection." In addition to his speech difficulties,

John was also suspected of having developmental and intellectual delays—though, at the time of the incidents, he was not formally diagnosed.

On February 10, 2017, Jane told school officials that John gave her an unwanted hug and that he "humped" her three times (the "February 10 incident"). When asked the meaning of the term "hump," Jane demonstrated by "thrust[ing] her pelvis forward and backward several times." She also stated that John called her a derogatory term. The incident was reported to school administrators who imposed a three-day out-of-school suspension against John. Police investigated, but the prosecutor decided to not file a delinquency petition.

The next incident occurred on May 8, 2017 (the "May 8 incident"). While working on a project in class, Jane was walking to her desk when John approached her. According to Jane, John "tickled her up around her chest near her breast area and scratched her." John also "reached down to her private (vaginal) area and began tickling it over her clothes." This incident was also reported to school officials who observed scratches on Jane's chest. John received an eight-day out-of-school suspension. When he returned to school, John was assigned to a different fourth-grade classroom and was placed in a separate lunch period from Jane. School administrators sent John's parents a letter indicating he was to have "no contact" with Jane. This incident was also investigated by police. The prosecutor filed a delinquency petition against John, but charges were later dropped because the trial court found John to be incompetent. Soon after the May 8 incident, Jane transferred to another elementary school in the Alpena Public School District, where she remained through fourth and fifth grades.

In 2018, Jane and John advanced to sixth grade at Thunder Bay Junior High School ("Thunder Bay"), which is also in the Alpena Public School District. Before the school year, plaintiff's counsel sent school administrators a letter indicating that Jane was to have no contact with John. Plaintiff met with a principal at Thunder Bay, who assured plaintiff Jane and John would not interact and that John's instructional aide would be with him throughout the day. The principal also verified that Jane and John would not ride on the same school bus. Despite these assurances, the two rode the same bus the first day of school. Jane reported John was "doing . . . this weird . . . dance in front of the aisle . . . but he was . . . right by me, and he kept . . . doing it . . . to me." Jane immediately told school administrators about the incident. At first, Jane was assigned to a different bus, but it was later arranged for John to change buses. Jane also reported seeing John in the hallways as they passed between classes. Consequently, John's aide was directed to take him a different route to his classes; the aide was also told to keep a "straight-eye view" of John at all times. Jane eventually left Thunder Bay and transferred to a private school where she remained.

Plaintiff filed this complaint on Jane's behalf alleging gross negligence[1] and hostile environment under the ELCRA. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). Specific to plaintiff's ELCRA claim, defendants argued plaintiff failed to state a claim because a hostile-environment claim on the basis of "student-on-student" sexual harassment was not actionable under the ELCRA. However, even if plaintiff did present a claim

---

[1] Plaintiff conceded at oral argument to the dismissal of her gross negligence. Gross negligence is not at issue in this appeal.

under the ELCRA, summary disposition was appropriate because plaintiff failed to satisfy the elements of a hostile-environment claim. The trial court agreed, concluding Michigan precedent does not offer a remedy under the ELCRA for hostile educational environment arising from student-on-student harassment. The trial court further determined that, even if plaintiff could state a claim on this basis, plaintiff had failed to demonstrate there was a genuine dispute of fact as to whether defendants were vicariously liable for John's actions. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). Summary disposition is appropriate when "the claim is so clearly unenforceable as a matter of law [and] no factual development could establish the claim and justify recovery." *Id*. In reviewing a trial court's decision on a (C)(8) motion, this Court accepts as true all factual allegations supporting the claim, as well as any reasonable inferences that may be drawn from them. *Id*.

By contrast, "[a] motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Campbell v Human Servs Dep't*, 286 Mich App 230, 235; 780 NW2d 586 (2009) (quotation marks and citation omitted). When reviewing an order of summary disposition under MCR 2.116(C)(10), this Court examines all documentary evidence in the light most favorable to the nonmoving party to determine whether there exists a genuine issue of material fact. *Ardt*, 233 Mich App at 688. Under the burden-shifting framework of MCR 2.116(C)(10):

> [T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted)].

## III. MCR 2.116(C)(8)

Plaintiff argues that the trial court erred in granting defendants' motion for summary disposition under MCR 2.116(C)(8) in which it concluded that a hostile educational environment claim based on student-on-student harassment is not actionable under the ELCRA. We agree.

## A. LAW AND ANALYSIS

The ELCRA is designed to target " 'the prejudices and biases' borne against persons because of their membership in a certain class, and . . . to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Radtke v Everett*, 442 Mich 368, 379; 501 NW2d

155 (1993), quoting *Miller v CA Muer Corp*, 420 Mich 355, 363; 362 NW2d 650 (1984). To further this purpose, MCL 37.2102(1) states:

> The opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right.

The ELCRA specifically prohibits gender-based discrimination by educational institutions, stating they shall not "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2402(a). Similarly, educational institutions are prohibited from "[d]eny[ing] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex . . . ." MCL 37.2302(a).

The ELCRA includes sexual harassment as a form of sex discrimination. MCL 37.2103(i). Sexual harassment "means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . ." MCL 37.2103(i). There are three general types of sexual harassment:

> (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

> (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(i).]

This case requires us to determine whether Jane was subjected to a hostile educational environment. Traditionally, hostile environment claims encompass workplace discrimination, and plaintiffs are required to prove by a preponderance of the evidence that:

> (1) the employee belonged to a protected group;

> (2) the employee was subjected to communication or conduct on the basis of sex;

> (3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Chambers v Trettco, Inc*, 463 Mich 297, 311; 614 NW2d 910 (2000), quoting *Radtke*, 442 Mich at 382-383.]

The fifth element is at issue in this case; specifically, whether an educational institution is vicariously liable for a student's conduct under the doctrine of respondeat superior. Historically, this doctrine held that employers are vicariously liable for the acts of their employees because "[a]n employer is generally liable for the torts its employees commit within the scope of their employment." *Hamed v Wayne Co*, 490 Mich 1, 10-11; 803 NW2d 237 (2011). This principle is predicated on the understanding that employers exercise some measure of control over their employees' conduct, and therefore, employers may become liable for employees' indiscretions. See, e.g., *Hoffman v JDM Assoc, Inc*, 213 Mich App 466, 468; 540 NW2d 689 (1995) (discussing the "control test" which "define[s] and limit[s] the scope of the master's liability under the doctrine of respondeat superior.").

Whether schools also exercise control over their students such that a school may be vicariously liable for students' conduct is an issue of first impression. There is a difference between employers' control over their employees and schools' control over their students. See, e.g., *Davis v Monroe Co Bd of Ed*, 526 US 629, 651; 119 S Ct 1661; 143 L Ed 2d 839 (1999) ("Courts . . . must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults."). However, this does not mean that schools lack *all* control over student conduct. A basic principle of Michigan jurisprudence is that schools exercise some amount of control over students via their responsibility *in loco parentis*. See *Gaincott v Davis*, 281 Mich 515, 518; 275 NW 229 (1937) ("At least in a limited sense the relation of a teacher to a pupil is that of one *in loco parentis*."). "The term *in loco parentis* generally has been understood as referring to a temporary assumption of the duties, character, or function of a lawful parent." *In re Smith*, 335 Mich App 514, 530; 967 NW2d 857 (2021) (RONAYNE KRAUSE, J., dissenting).

Indeed, the Legislature has directed schools to exercise this responsibility by responding to student-on-student assaults. For example, the Revised School Code, MCL 380.1 *et seq.*, states, in part:

[I]f a pupil enrolled in grade 6 or above commits a physical assault at school against another pupil and the physical assault is reported to the school board, school district superintendent, or building principal, then the school board or the designee of the school board . . . on behalf of the school board shall suspend or expel the pupil from the school district for up to 180 school days. [MCL 380.1310(1).]

Similarly, in the instance where a student commits a criminal sexual assault against another student, the school "may authorize or order the suspension or expulsion from school." MCL 380.1311(1). A school's authority over its students is not just in the extreme case of suspension or expulsion—a school is also permitted to exercise "restorative practices" designed to "repair[]

the harm to the victim and the school community caused by a pupil's misconduct." MCL 380.1310c.

With these authorities in mind, we hold that schools do exercise a measure of control over students such that they may be vicariously liable for hostile educational environment discrimination arising from student-on-student harassment. We find support for this conclusion in a similar federal district court[2] case, *Williams v Port Huron Area Sch Dist Bd of Ed*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued March 30, 2010 (Case No. 06-14556), rev'd on other grounds *Williams v Port Huron Sch Dist*, 455 Fed Appx 612 (2012). The issue in *Williams* was "whether a civil rights claim is stated under the ELCRA for student on student racial harassment." *Id*. at 11.[3] The *Williams* court noted that hostile educational environment claims often involve incidents between teachers and students, and were resolved using the framework for hostile work environments. *Id*. at 14. However, the federal court was "not convinced that teachers have greater protections under the ELCRA than students." *Id*. In the federal district court's view, a school's vicarious liability for student-on-student harassment could also be established using the hostile work environment framework. *Id*.

The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(8) because "[p]laintiff has not cited any binding authority that extends 'student-on-student' harassment to an ELCRA claim." As we discussed, *supra*, schools stand *in loco parentis* to the offending student and can be held vicariously liable for student-on-student harassment. Thus, the trial court erred in granting summary disposition simply because plaintiff asserted a claim predicated on student-on-student harassment.

## IV. MCR 2.116(C)(10)

Plaintiff argues that the trial court erred in granting defendants' motion for summary disposition under MCR 2.116(C)(10) when the trial court concluded that there was no genuine dispute of fact concerning defendants' vicarious liability for John's conduct. We disagree.

## A. LAW AND ANALYSIS

This issue concerns whether there was no genuine dispute of fact that defendants were not vicariously liable to plaintiff under the respondeat superior doctrine. As discussed, the question of whether schools may be held vicariously liable under the ELCRA for student-on-student

---

[2] See *Linsell v Applied Handling, Inc*, 266 Mich App 1, 16; 697 NW2d 913 (2005) ("Although decisions of a federal district court interpreting Michigan law are not precedent binding on Michigan courts . . . courts may find the reasoning of the federal court persuasive.").

[3] The trial court in this case declined to follow *Williams* because it was reversed on appeal by the Sixth Circuit Court of Appeals. However, in reversing the federal district court, the Sixth Circuit stated its analysis had "no bearing on the merits of Plaintiffs remaining claims." *Williams v Port Huron Sch Dist*, 455 Fed Appx 612, 621 (2012). Thus, the trial court's reasoning in this case is flawed because the Sixth Circuit's opinion provides no analysis of the *Williams* plaintiffs' ELCRA claims.

harassment is an issue of first impression for this Court. Accordingly, there is no standard by which a school may be deemed vicariously liable for a student's harassment of another student. This Court has recognized the lack of education-based ELCRA claims, concluding it is appropriate to turn to employment-based ELCRA cases for guidance. *Fonseca v Mich State Univ*, 214 Mich App 28, 30; 542 NW2d 273 (1995). Specifically, we noted:

> Because the educational provisions of the act have received little judicial interpretation and because the statutory language employs terms of art used and judicially interpreted extensively in the specialized but extensive field of employment discrimination, we look to these decisions to help us interpret and apply the law to the facts. [*Id*.]

In the employment context, an employer may avoid vicarious liability if, upon notice of the alleged harassment, "it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Radtke*, 442 Mich at 396.

Here, defendants moved for summary disposition, in part, because, "there [was] only a single prior incident that could vaguely suggest sexual misconduct in November of 2016, and [Jane] was not involved." However, after learning of John's behavior toward Jane, "they put in place preventative and appropriate measures to ensure that further incidents did not occur." In defendants' view, their response to John's behavior was appropriate in light of both students' right to a free appropriate public education ("FAPE") and John's status as a special education student, which carries with it special disciplinary protections. E.g., 34 CFR 300.536.

Defendants cited to the statutory provisions under the Revised School Code that govern schools' response to student behaviors.[4] They explained how the steps they took after the February 10 and May 8 incidents comported to the Code. Defendants included several exhibits in support of their assertions, including John's IEP, disciplinary reports involving John, and deposition testimony explaining defendants' actions in response to John's conduct. Again, to succeed under MCR 2.116(C)(10), defendants needed to present documentary evidence showing that they investigated the incidents and took prompt and appropriate remedial action immediately upon learning of John's behavior. *Radtke*, 442 Mich at 396. Defendants satisfied this burden.

The burden then shifted to plaintiff to show a genuine dispute of fact that defendants properly addressed the incidents. Plaintiff responded to the motion for summary disposition, arguing: "Defendant [sic] knew about John's sexual behavior before yet failed to implement add acquit [sic] prompt and adequate procedures to prevent the harm suffered by Jane . . . ." In plaintiff's view, defendants "plac[ed] the responsibility for preventing the harm into the care of somebody who was unqualified and who defendant [sic] knew had failed to do her duty on prior occasions."

---

[4] They cited to: MCL 380.1310(1); MCL 380.1310c; MCL 380.1310d; and MCL 380.1311(1).

As noted, under the burden-shifting framework, the nonmoving party "must go beyond the pleadings to set forth *specific facts* showing that a genuine issue of material fact exists." *Quinto*, 451 Mich at 362 (emphasis added). Plaintiff's assertions that John's instructional aide was "unqualified" and that she failed "to do her duty" are not "specific" facts which demonstrate that defendants' remedial actions to John's behavior was unreasonable. While plaintiff's response to the motion for summary disposition included a number of exhibits, plaintiff failed to pinpoint anything within the exhibits to support her assertions. Moreover, plaintiff failed to explain why defendants' other actions—John's suspensions from school and his removal from the fourth-grade class—were not appropriate remedial actions. Thus, summary disposition was appropriate because plaintiff failed to meet her burden as the nonmoving party.

In sum, the ELCRA provides a remedy for plaintiffs who assert hostile educational environment claims on the basis of student-on-student harassment. A school avoids vicarious liability for these claims if it investigates and takes prompt and appropriate remedial action upon learning of the student's behavior. Although the trial court erred to the extent it concluded summary disposition was proper under MCR 2.116(C)(8), it correctly granted summary disposition under MCR 2.116(C)(10) because plaintiff failed to show a genuine dispute of fact that defendants did not take prompt and appropriate remedial action. "[W]e will not reverse where the right result is reached for the wrong reason." *Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993).

Affirmed.

/s/ Thomas C. Cameron
/s/ Sima G. Patel
/s/ Anica Letica